So as you're getting ready for, as you're getting ready, we have a couple of law students arguing today. I think you're splitting time. I assume you must be splitting issues or something like that, and you're, or not? But go ahead and have the first student come up. I feel bad for the government because law students are always really well prepared. When I used to argue against them, they're some of the best prepared, so I'm sure it will be a great argument this morning. I think we have 15 minutes per side. We need to reserve. Are you both planning to do rebuttal, or just one of you going to do rebuttal? Just one of you is going to do rebuttal. Okay? So you're going to start. You're going to, are you only going to do rebuttal, or are you, you're only going to do rebuttal? Yes. Okay, so you're going to do the opening.  That's how you're breaking it down. All right, perfect. I understand. And so you go ahead, and given, to make sure we don't burn up and you don't have any time, I might, I'll end up cutting you off if we're going to go long to make sure she still has time. And so you can go ahead and start. State your name and how much time you plan to keep for your colleague. Good morning, Your Honors. May it please the Court, my name is Claire Weintraub on behalf of Petitioner Millie Kalulu. I will reserve five minutes for rebuttal to be delivered by Natalie Kalus. I'd also like to make you aware that Petitioner has traveled from San Diego to be with us here in the room today. Millie Kalulu has demonstrated that she is eligible for asylum because of her identity as a lesbian from Zambia, a country where it is undisputed that same-sex relationships are illegal, and where Millie experienced three instances of violent persecution because of that identity. The agency's decision to deny Millie's claims on the basis of credibility are unsupported by substantial evidence and the product of legal error and should therefore be overturned. As a threshold matter, it is undisputed that the immigration judge stereotyped Millie when she concluded it was implausible that she was a lesbian because she did not participate in LGBT activities or visit LGBT bars or clubs in the United States. The government concedes that this was rank speculation and stereotyping, and this stereotyping was the sole basis of the finding that it was implausible that Millie was a lesbian, the core of her asylum claim, as well as infects the decision as a whole. I will now focus on three additional errors committed by the agency, highlighting them each and then taking them in turn. First, the agency improperly relied on alleged inconsistencies and in violation of this court's Second, in violation of GWO, the agency improperly relied on the timing of Millie's asylum application. And third, contrary to the INA, a long line of precedent beginning with Shrestha and this court's recent decision in Antonio, the immigration judge failed to consider Millie's credible fear interview, thus failing to consider the totality of the circumstances in this case. To start with the inconsistencies, the agency relied on four alleged inconsistencies to find that Millie did not testify credibly. Each of those inconsistencies is either based on a misreading of the record or utterly trivial. In addition, three of those four inconsistencies, Millie was never provided an opportunity to explain. Ms. Weintraub, suppose we agree with you that there are a number of findings that seem to either lack support in the record or are based on speculation or other things. It seems as if you're arguing that we should find that the evidence compels a conclusion of credibility. But isn't the more likely path in some of our precedent to send it back for the board to determine if it would make the adverse credibility determination under a totality of the circumstances? Yes, Your Honor. Under the post-alum line of cases, the most common approach is for the court to remand to the BIA to reconsider how the totality of the circumstances comes out based on a number of findings that were or were not supported by substantial evidence. However, Petitioner does argue that every single finding relied upon by the BIA was unsupported in this case. And in addition, there were several legal errors committed by the agency, including a failure to provide an opportunity to explain that independently weren't remanded in this case. Okay. To provide an example of one of the inconsistencies that demonstrates the errors committed by the agency, the agency relied on an alleged inconsistency about which of Millie's family members knew about her sexual orientation. Millie gave actually consistent testimony and provided supporting evidence that two family members knew of her sexual orientation. Her aunt, Tente, who lived here in the United States and who she told sometime as a teenager, and her cousin who lived in Zambia, who she told shortly after the first attack. The immigration judge and the BIA found that Millie gave inconsistent testimony based on a quickly corrected mistake in Millie's testimony. Millie was first asked by the immigration judge, did anyone else in Zambia besides Amina Millie's girlfriend at the time, know about your sexual orientation? To which Millie responded, no one except for my cousin. She went on to explain that her aunt, Tente, lived here in the United States rather than in Zambia. Shortly after the immigration judge asked Millie, did anyone else, did any other family member know about your sexual orientation? To which Millie answered no, but then immediately clarified that she meant no one except for her aunt who lived here in America. And under Wren, an immediately corrected innocent mistake such as this is not a proper basis for an adverse credibility determination. In addition, this court's case law including- We give a great deal of deference to the findings of the BIA because the administrative law judge actually heard the testimony, correct? That's correct, Your Honor. The standard of review here is substantial evidence. Okay. What's the standard of review on this summary determination that the BIA made regarding the documentation that Ms. Kalulu had put into the record? It seems to me that the BIA never did expressly analyze whether or not Ms. Kalulu's documentary evidence could support the claims that she made. Yes, Your Honor. The findings by the BIA are both unsupported by substantial evidence as well as the agency committed legal error which requires de novo review in analyzing the supporting documents. Namely, the agency failed to provide Millie notice or an opportunity to provide corroboration of the validity of her supporting documents such as ID cards or notarization of the declarations. Under Munyu, this is a legal error that independently warrants remand. Importantly, the supporting documents in this case independently established Millie's asylum claim because her cousin's declaration establishes that Millie is a lesbian and that she was of those three instances of past persecution that she experienced in Zambia. I think the IJ concluded that your client, quote, had not established independent of her own non-credible testimony that she would more likely than not be tortured. That was the only reference to the documentation that I could find. Is there anything else in there? Your Honor, are you referring to the country conditions or the supporting documents that Millie provided? The supporting documents. So, the immigration judge among other findings found that the declarations provided by Millie did not corroborate her testimony for a number of reasons which as we argue in our brief are misreadings of those documents. In fact, they corroborate many of the elements of the three attacks. In addition, the immigration judge and the BIA faulted the medical report that Millie provided for containing a police signature despite the fact that the immigration judge never asked Millie or provided her an opportunity to explain why that police signature was there even though Millie testified consistently that she did not report the attack to the police. So, that was a legal error as well for the immigration judge to fail to provide Millie an opportunity to explain that as well as... And there was a doctor's signature on that document as well if I recall correctly. That's correct, Your Honor. And also under, I believe, Batari, an immigration judge must consider all plausible explanations for alleged inconsistencies between a supporting document and the petitioner's testimony which the immigration judge did not do in this case. If I may turn now to discuss the failure to consider the credible fear interview. The agency aired... One final thing before you, because I think this is a good time for this, but I just want to be clear. I think we've thoroughly fleshed out the documentation and the medical reports that you were speaking of earlier. Antonio v. Garland regarding credibility and other factual findings, however, states that this court has to accept them as conclusive unless any reasonable adjudicator would be included to the contrary. So that's the hill you have to climb for us to find that there was not substantial evidence to find your client lacked credibility in her testimony, right? That's correct, Your Honor, with regard to the factual findings of the agency, but in addition there were several legal errors in this case, which do require de novo review by this court. Just to quickly address the failure to consider the credible fear interview, this was a highly probative piece of evidence in the record because it corroborated nearly every element of Millie's asylum claim. She provided detailed and consistent testimony. In addition, the... So this is your argument that the judge, the immigration judge, that I guess neither the immigration judge or the BIA ever discussed this, but yeah, I didn't find that particularly a compelling argument because, you know, remember what's going on here is the immigration judge is saying, is finding inconsistencies correct, you know, and saying there's demeanor problems, et cetera, in order to make an adverse credibility determination. In doing that, the analysis is looking at inconsistencies. So it doesn't... If that's your analysis, it doesn't make sense to me that you would go out there... If you've got five inconsistencies, right, let's just say, let's stipulate for a second that that would be enough to make an adverse credibility determination. The fact that you may have a hundred consistencies doesn't somehow rehabilitate your... The adverse credibility determination. Now, if I found you to be a liar, so to speak, in five instances, that's the whole point of an adverse credibility determination. It knocks out otherwise consistent testimony. So I didn't find that argument super compelling, the fact that they didn't discuss it. I am eating into your colleagues' time, but I'm not sure. I understand that argument. I don't know if my colleagues probably do, too, but I didn't find it super compelling. Yes, Your Honor. I'll just answer briefly so I can reserve the rest of my time for rebuttal. Under the INA, the immigration judge is required to consider the totality of the circumstances, and this Court held in trust that that means that the immigration judge may not cherry-pick inconsistencies from the record. Yeah, the problem with your reading of the totality of the circumstances is that it's sort of substantial evidence, actually, both substantial evidence review and the way an adverse credibility determination works. If you find somebody lying on a few things, then you knock out other testimony that you don't know that they're lying about, right? If you knew they're lying about all of it, if you could prove they're lying about all of it, you don't need an adverse credibility determination. That's how an adverse credibility determination works. And so that's not inconsistent, I don't think. We've always said, it's always said that we have to look at the record as a whole. So we've always had to look at that. So I'm not sure that I agree with that argument of yours, but you've got some good arguments, but I'm not sure that one. Just to answer very briefly, and then I'll reserve the rest of my time, Shrestha says that this court, or the agency, may not ignore evidence that contravenes an adverse credibility determination. If the agency had considered the credible fear interview, but found... Right, but that's different. That would be like, I don't, as I read that, just to be clear, as I read that, what I'm saying is like, if I'm saying you have an inconsistency, and so you're, I'm going to say you're not credible. But there's another piece of evidence that actually explains the inconsistency. You can't ignore that evidence. But that's not the same as saying, you have a whole bunch of consistent stuff over here about other topics, you have these inconsistencies over here, and we have to let that outweigh the inconsistencies. I don't, I don't think it works that way. I think it works the other way. Well, Your Honor, this, the credible fear interview does go directly to the finding about Millie's failure to initially bring up her fear of return at the border interview because Millie provided a consistent explanation for that, and because this consistent testimony about her fear happened shortly in time after that initial interview, so we do believe it goes directly to some of the findings. It happened like a month later, I think. Is that right? It happened like a month later? It didn't happen right after. I think I, my clerk looked into that. It happened like a month later. The interview happened a few weeks later, but per the record, Millie asserted her credible fear almost simultaneously with that initial interview. And if I may, I'd like to reserve the remainder of my time for rebuttal. Thank you, Your Honor. Thank you. And just to be fair, we'll give her five minutes so she's not mad at her for the rest of her law school time on rebuttal. Good morning. May it please the Court. Robert Tennyson for the government. Substantial evidence, or better, under the totality of the circumstances, the adverse credibility determination is to be upheld unless a reasonable fact finder would be compelled to find otherwise. And here there are adequate problems with the Petitioner's testimony, or the agency found adequate problems with the Petitioner's testimony, both with regard to demeanor, with regard to the plausibility of her explanation as to why she did not file for asylum earlier, and with respect to various inconsistencies. Mr. Tennyson, I'm sorry to interrupt, but this point was sticking in my mind this morning. How could it be that the agency can hold against a person the timing of applying for asylum when Congress allows the Petitioner to apply within a year of entry of the country? How can that be a valid basis for an adverse credibility determination? I don't ... It can't be because you've got the year, right? So Congress says you can file within a year, but now the immigration judge is dinging a person for waiting four or five months to bringing it up. I have a hard time seeing how that can be a valid basis. Right. And I don't think the immigration judge was focusing on, hey, you didn't file within a year. It was, why didn't you file within a year? If you were ... I mean, you came in and you were completely afraid, and you knew before you were coming that you planned to stay, or at least you were testifying to that, because of this fear, and that this fear caused you to be afraid to talk to officers, so on and so forth. Well, and her answer was she didn't know anything about asylum law or the availability for relief that way, which the agency also does have to consider a reasonable or plausible explanation and explain why it disbelieves it. So I'm having a hard time understanding that one in particular. Right. I think the thought was, if you were so afraid, why didn't you look into this as soon as you got here? And the answer is, I didn't know it existed, but if you were ... I think that the immigration judge believed that it wasn't plausible, because if you were that afraid, why wouldn't it be something that you looked at as soon as you came? I mean, asylum is generally well-known as a form of relief, so why, you know, the explanation ... So finding that explanation not to be plausible, I think, might be reasonable. I thought her aunt testified about the fact that she planned to ask for asylum. I thought her aunt testified to the fact that she planned to ask for asylum. The aunt did. So in this instance, you know, Millie says that she didn't know about asylum, but the aunt says ... Now, there's some credibility challenges for her aunt, so I don't know what to do with all that. Right. But I thought that her aunt had said ... But as I understood ... I mean, I get the idea. I was thinking about this, too, and I was getting ... I get the idea that you have a whole year, but suppose, I suppose, that Congress didn't give ... didn't put a limitation at all. You could apply for asylum 20 years, 30 years after. I still think, like, there seems to be something intuitive about the idea that if somebody waits 20 years to ask for asylum, you'd be like, well, it doesn't seem ... Something seems wrong with that. So I'm not sure ... I mean, I don't know what to do with those kind of factors. It seems to me that they certainly don't weigh in favor of granting asylum, right? And it seems ... And maybe they're just a light ... They just don't have much force, but it does seem to me that there's something to the idea that the longer you wait, the ... We would definitely think that if there was no limit, and I don't know the fact that Congress gave a one-year limit necessarily completely nullifies that was my thinking, but I don't know. Right, right. I don't think that the immigration judge actually thought about it in those terms and may instead have been thinking about it in terms of the explanation that she provided. But you're right. I mean, there does seem to be something, and it would depend upon the circumstances, right, of how long you would want to wait. Say, for example, someone comes in, they've got a non-immigrant visa. Why apply for asylum right off the bat when you know that you get to stay here for X number of years and you may have a lawful path to citizenship? But that's beside the point. This is ... Again, we're talking about sort of weighing things and weighing factors and why you would think one way or another, and this is a question about whether or not the It does, but for this point, in that our case law also discusses that when the agency has made a totality of the circumstances finding for adverse credibility, it's not relying on any one thing in particular. It's the whole package. It is the whole package, right, Your Honor. And I found that their petitioner has persuasive points as to a number of these issues. I would say at least more than half, maybe two-thirds, where the IJ was relying on speculative assumptions. I think the most egregious was that it was implausible that she was lesbian, right? And I think to the government's credit, you disavowed that. But there are many others, and it seems to be the same way with the documentary evidence where just these findings were made that are not supported by the record. And so what I'm struggling with is how do we evaluate what to do in that case when if you got eight or nine of the 13 that were in the record are under Kumar and other cases, we should set it back to determine if the BIA would make that same totality of the circumstances finding because the board isn't saying I would do it just for one or two of these things. They're saying it for all the circumstances, many of which are infirm in my view. I mean, this is an excellent question because the court hasn't really, it has chosen not to draw any lines, right? And you know, there have been instances where one has fallen off and yet, you know, or more than one have fallen off. And for example, where there has been fraud involved in the application, the court has said no, no, that no reasonable fact finder would be compelled to conclude that this person was credible in those circumstances. And in other instances, this court has said, oh, well, we've got like three of the four have been knocked out. We don't know what the board would do in these circumstances. And I don't think that there's a clear rule here that this court has come up with as to what we do in these instances. I think the overarching principle is the agency has, post Ming Dai, is the agency has an adverse credibility determination and that is not to be lightly dispensed with unless no reasonable fact finder could conclude that it could uphold that adverse credibility. But that, to go back to my earlier point, that adverse credibility determination was based on the totality of these 13 factors. And if a number of them are, for lack of a better phrase, unreliable or unfounded, then what? It would seem to me that we would be overstepping ourselves by deciding on the agency's behalf that they would still make the adverse credibility determination based on some of them that might have some support as opposed to sending it back. That seems to be the import of Kumar in our other cases. Right. I mean, there is a, there is a, there is sort of a pairing of concerns, right? You don't want to step into the agency's shoes and step on the agency as to how they would actually decide these kinds of cases if a number of credibility factors came out when they, when they made this determination based on the totality of the circumstances. On the other side, what Congress has said is that, and Ming Dai said, is that these kinds of findings are conclusive unless, you know, a reasonable fact finder would be compelled to find the other way. I tend to think that, that what Congress has said goes, that it's loaded the dice in this particular way. But I understand that Kumar in this case is. Right. It seems to me, yeah, thinking about this. First of all, it seems to me it can't really be a counting exercise because a counting exercise kind of assumes that each one of the, like if there's 13, that each one is equally weighted, but you can imagine a circumstance where you have like one thing that just demonstrates the person's a pathological liar, right? And then the other 12 doesn't demonstrate that, you know, are weak and they all go away and you go, well, you only got one left. And so, but I mean, so that can't be right. As I understand the standard is, we look at whatever we think is left and we look at the, and we look at the record as a whole, but we say, you can say it one of two ways. Is there still substantial evidence supporting the agency's decision? Or you could put it the other way, which is, does the record compel, the record properly viewed, you know, knocking out the things we don't think. Right. Does the record compel the conclusion that the agency was wrong, in this case on an adverse case? And that's classic. I mean, that's how we've always said substantial evidence review. And I don't understand Alma or any of these cases to have changed any of that. And I think the risk is, the risk with that is that it very well, we may be very well holding up an agency, upholding an agency decision that the agency might have reached differently if it had seen it the way we see it. I mean, that is a risk. I think that's what, I think Judge Sanchez is right, that there's a, there's a risk of that, but it seems like that's built into our standard. Any type of deferential standard review where we're going to be deferential runs that risk, it seems like. Right, right. I don't expect that you will be upholding an agency standard, even if the agency may not do that. I don't, I don't, I don't know of any cases of ours that say where we conclude that the, that there is substantial evidence, or that, where we conclude that the record does not compel overturning, that we still send it back just because we think the agency might, if they revisited it, reach a different conclusion.  I don't think that's the case. Is there any case to say, even on one? I don't, I don't think that. I mean, the difficulty is, is that, is when you get to a circumstance where you just don't address that, where you say, look, we've got this many, and they're gone, and we just don't know what the agency. But isn't the answer in that circumstance to just look at those things that we think, and we don't know what the agency would do, but we do know that we start with what the agency concluded. Right. You know, it concluded, you know, here we're talking about adverse credibility termination, but elsewhere we could be talking about whether there was past persecution, or we could be talking about something, you know, anything that's evidentiary based. Right. And we say, is there substantial evidence to uphold that? That's our review. And that seems to be, right, that seems to be the end of the question. That should be the end of the question. Our review is not, I don't think, do we, what do we think the agency would have done, and if we're not confident the agency would reach the same conclusion, we send it back for them to do a redo. Well, then can I ask, how do we give force to the totality of the circumstances requirement in statute? Right. Because if that phrase weren't there, then I think I might tend to agree with Judge Van Dyke in that sense, but the adverse credibility termination itself was based on a totality, and if there's something, well, I would agree with Judge Van Dyke. Not all adverse findings are equal, but what's striking to me about this one was the most central one was unfounded, that she, that it was implausible that she would be a lesbian based on all the evidence, credible fear interview, documentary evidence, her consistent testimony. Doesn't that finding that went awry somehow give gloss to the fact that it, you know, there was something that went wrong here with the agency's findings? Right. And so we should send it back for them to determine, really, is there a totality of the circumstances determination of adverse credibility in that now? So let me break that down into certain parts. First, I think what we stepped away from was the agency's determination that, hey, she didn't go to, because she didn't go out to lesbian clubs, she didn't do this, she didn't engage in these activities. We can't find that her state that she was not credible on that ground, that she is a lesbian on those grounds, that she's not a lesbian on those grounds. There's these other problems with her testimony that maybe throw the whole thing into dispute, including that. But that part of the adverse credibility finding, yeah, that's problematic. That's part one. But even assuming we go outside of that, let's assume that the rest of this, that a reasonable fact finder would be compelled to find that she is a lesbian, right? That we've stepped away from this, and everything else on the record, nothing eats away at that. I think that becomes a problem for the totality of the circumstances analysis, if that's what you're saying, that given the way the board phrased it, that under the totality of the circumstances, and they went through all the various factors, they said, all of this together, this is problematic. You can see it going a different way, in which they say, totality, that you've got a decision and that you have a totality of the circumstances, but you can pull out pieces, right? Like a Jenga puzzle, you can pull out little bits, and this thing still stands. That in fact, you know, given the compelling evidence, I guess, the compelling evidence standard, it's a Jenga puzzle with super glue attached. And I guess the point is, once we've pulled out those pieces, who makes the decision as to whether this thing still stands? In my view, the precedent from Kumar and others is, it's not our decision to make. We send it back to the board to decide if that Jenga piece puzzle pillar is still standing or has fallen, in their view, in its view. I think the question is, it depends on how the board... The answer is, they've already made the decision. But if they've already made the decision... And we are reviewing that decision for substantial evidence. If they've already made the decision, it goes to substantial evidence. Let me ask you something about this, kind of related to this. An adverse credibility determination, as I see it, I think there's a lot of confusion about what an adverse... An adverse credibility determination, the whole purpose of it, as you heard me mention earlier, I think to the point, is you're basically saying, for lack of whatever, I caught you in some inconsistencies. I caught you in a lie, or your demeanor seems like a lie, or the various... And the whole point of an adverse credibility determination is you say, I've got these inconsistencies, and so we don't have to believe the rest of what you're saying, even though I can't catch you in an inconsistency in that, which happens very often in these type of cases. And so, particularly with an adverse credibility determination, if the agency says, there's 13 reasons why we think that you are not credible, and we conclude, we end up saying, no, there's only five reasons. Only five of those reasons hold up. But if we think that those five reasons are substantial evidence, or to put it inversely, if we think that those five reasons, that given those five reasons, that the record does not compel a conclusion that they are credible, then why would we overturn the agency has made this determination, this factual determination about the fact that this person is not credible? To put it in a more mean way, but it's that they are a liar, right? That they're not... I mean, sometimes, but yes. I'm just saying that blatantly, because credible is like, you know what I'm saying? They're saying they're not credible. So why, if that determination that they're not credible, there is still substantial evidence to uphold that, even if some of the other reasons for finding them not credible, why would... I don't understand what our warrant would be to disturb that. I guess your response that we... Under the totality of the circumstances doesn't mean that we look at the record and say, well, let's find out how many times we don't know they didn't lie, because that's all we really know. We don't know the stuff we didn't catch them in a lie, and we don't know that they were being honest. We just know we caught them in a lie, or that they were not credible for these certain things. So it seems to me, especially with an adverse credibility determination, if there's enough evidence to uphold it, we uphold it. Exactly. I mean, that is what the standard that Congress has put in place. It is, these things are dispositive unless... And do we know if an agency would have reached that same conclusion? No, but that's the whole point of being a deferential, having a deferential standard review. But we don't know. Right. The dice are loaded in these kinds of cases. Congress has loaded the dice. It's you to uphold the adverse credibility determination. If the board were to say something different, and this is the reason why I said it, it depends upon what the board says, right? If the board says, every single one of these things are the grounds for why we make this decision, right? And it comes, and it's clear from the decision that they would have, that this is the only way, or most of them are the only way that they would have upheld the adverse credibility determination. And then you knock out various pieces. The way in which the board... I'm not sure that's even right. But I think... I'm not sure you're right about it. You're basically kind of making us read the mind of why the board reached the conclusion. But that's not how our substantial evidence review works. We say, what conclusion did the board reach, X. In this case, it's an adverse credibility. It could be something else. What conclusion did it reach? And then we say, does the record compel a different conclusion? If it does not, we uphold it. We don't ask ourself, well, exactly how did it reach the conclusion? And we do look at the record as a whole. That goes all the way back to INS versus whatever. So that's how I think the vitality of the circumstances comes in. But we don't get into this mind-reading idea of why the board reached it, and if we think that the board was relying on every single piece of evidence, then the fact that one of them gets knocked out. That's not... What... No, Your Honor. Case law says that. Your Honor, I'm not saying you mind-read. I think the presumption is when the board says that, when the board comes out and says... When the board doesn't say anything, this is exactly what you do. You have to uphold the adverse credibility determination. It is dispositive. Unless the record compels a different conclusion. Unless the record compels otherwise. The only time in which you would not do that is if the board comes out and says, we would uphold this determination because X, Y, and Z, period. I'm not even sure you're right in that circumstance. You're not even sure in that circumstance. But that's not this case. That's not this case. We don't even have to worry about that here. Then how... You know, I keep mentioning Kumar and Barsegian. Right. These are precedents of our circuit that we are bound by. Right. So it's not theoretical. It's not. This has been decided by previous panels of our circuit. Right. So tell me, in your view, what distinguishes this case from those two that require a remand to the agency to determine adverse credibility under a totality of the circumstances once you take out those unreliable findings? Your Honor, post Ming Dai, I don't know. I think this court is concerned about putting itself in the agency's shoes, but Congress doesn't let you put, doesn't let the court put itself in the, doesn't let, doesn't want to give the agency a second bite at the apple where this court may not be concerned, may be concerned about what they would have determined otherwise. I think that's the, I think that's where it goes. Okay. We've taken you way over, but I want to make sure if you have any further questions and... Okay. But the main thing was I was going to make sure that the time evened out so that when she gets her full five minutes... Right. Exactly. So all to the good. Well, come on up and we'll give you five minutes for rebuttal. Good morning, Your Honors. My name is Natalie Kalis, also on behalf of Petitioner. I'd like to first address the timing of Millie's asylum application and note two points. First, under this court's case law in Guo, this court held it impermissible to consider an applicant's later time in filing within the one-year deadline and find that that weighed against the Petitioner's credibility finding. Second, the IJ here and board unreasonably discredited Millie's explanation for why she applied late in her asylum application. She explained within her credible fear interview and in court that she didn't know about the asylum application process, and I would also like to emphasize that she was here legally  Moving on to the standard of review and ability for this court to remand if it does find some of the inconsistencies not supported by substantial evidence or finds legal error in this case. First, the implausibility finding here that Millie was not a lesbian goes to the core of her asylum claim. That's entirely what her claim is based on, and as the government conceded in its answering brief, that implausibility finding was based on speculation and stereotyping about how LGBT individuals should act. Simply, you cannot excise the stereotyping from the entire decision. As Judge Sanchez noted, this court has numerous case law that allows the court to remand the case when it finds certain findings not supported by substantial evidence. I don't want you just to talk. The whole point is you're supposed to have a dialogue with the judge. So on that issue, let's say there were three things, this impermissible stereotyping, right? And that's gone. And the second thing was that Millie was a hardened bank robber, robbing banks and doing all kinds of things that would undercut her credibility in a foreign country. Well, I mean, I think it would intuitively make sense to us all that, well, the agency could rely on that other fact, even if they got the one wrong, to conclude that she's not credible, right? I mean, we see that in cases. This person did this other thing. And so that kind of goes to the point of Merrilee saying this other thing was a really core thing. It really doesn't tell us anything about the remaining things, whether or not the remaining things that would be legitimate would be enough to satisfy that this person is not credible. And then as you've heard me say already, once you determine they're not credible, it knocks out all their testimony. That's how it works. So that's what I'm struggling with. I get your point as to, and I don't know that I disagree with your point as to that this was a illegitimate basis to rely on, but I don't know that I can agree with you that that means we can knock out everything else, even if it is central, et cetera. For the reason I'm saying. Does that make sense? Yes, Your Honor. And I think your point is exactly, your point that you, we don't know how the judge would have came out on the rest of the credibility findings is exactly why a remand is warranted here. Wait, but that's my, I don't think that's how it works. If we, we don't look at the record and say, boy, this has really caused us to wonder how the judge has come out. Substantial evidence, we look and say, is there enough? I mean, you know the standard. You studied it for, we say, is there enough to uphold this? That's the whole point of substantial evidence. It's a very deferential review. It's not asking what they would have reached. In fact, you may be upholding in a decision that they wouldn't have even reached. If that's the downside of that sort of deferential review, but the upside of it is, is that they get to make the decisions. We don't. And so I don't think that's quite right. That we, the very fact that we're not sure what they would have done on remand means that, in the first instance, means we should remand it. Isn't the question, we look at the record, we see if there's enough evidence to still support it, or to put it the other way, does the record, the correct record, compel a different conclusion? And if so, we say, you know, I don't know what I would have done. I don't even know what they would have done, but we uphold the decision. Your Honor, I would turn your attention to four of this Court's cases which have remanded where it's found a certain number of the inconsistencies to not be supported by substantial evidence, mainly Munyu, Kumar, Barsegian, Alam, and, excuse me, 5, Lopez, Moonsaur as well. Did any of those decisions say, well, the rest of the evidence is substantial, the remaining evidence is substantial evidence to uphold the decision, but we're going to remand it anyway because we just don't know what the agency would have done? I don't think they did that, because the Supreme Court would have overturned them. Your Honor, in, for example, Kumar, the Court found three of the four inconsistencies not supported by substantial evidence and remanded to make, to allow the Board to determine whether the entire decision would have been supported by substantial evidence. Recognizing that I'm out of time, if I may briefly conclude, if the Court here finds any errors in the agency's decision, it may remand to the agency to reconsider all of the findings under Alam. Thank you. Thank you, counsel. Thank you to both sides. Very helpful argument from both sides. Great job by the law students. Great job by the government, too, even though you graduated, and we'll be moving on to our next case. This case is submitted.
judges: VANDYKE, SANCHEZ, Murphy